# JOHN GRAY

*v.*

# SAMUEL S. ST. JOHN.

1. FRAUD — *evidence of.* Where it is alleged that a debtor sold a quantity of goods with the fraudulent design of hindering and delaying his creditors, proof of the manner in which he had recently obtained the goods from his creditors, is, admissible, as well as the manner in which he disposed of them.

2. PRACTICE — *rejecting merely cumulative evidence.* Courts have the right to limit the number of witnesses to be examined, and the number of depositions to be read to prove a particular fact. When a fact is sufficiently established and is not controverted, the court may properly refuse to suffer its time to be occupied in hearing further evidence on that point.

3. REMEDY — *where a sale of goods has been induced by fraud.* Where a party has been induced to sell goods upon a credit by false and fraudulent representations, the defrauded creditor has his election to disaffirm the sale on the ground of fraud, and invest himself with the rights and entitle himself to the remedies the law affords in such cases; or, he may affirm the sale and have the rights and remedies of other creditors.

4. SAME — *and herein of the evidence properly admissible, in view of the remedy resorted to.* Should the defrauded creditor elect to disaffirm the sale, he may bring his action of replevin or trover for the recovery of the property obtained by fraud, or damages for its conversion, and in such actions, proof of the means by which the fraudulent debtor obtained the property, and the knowledge of such means on the part of the third person to whom the fraudulent vendee had afterwards sold the property, would be admissible and important.

5. But to sustain the rights of the creditor in an action of assumpsit to recover the price for which the goods were sold, such evidence is entirely immaterial.

6. EVIDENCE — *in trespass against an officer for seizing and carrying away goods.* And where a sheriff is sued in trespass by a purchaser from the fraudulent vendee for seizing and carrying away goods, and the sheriff justifies under a writ of attachment issued at the instance of the defrauded creditor, he so far represents such creditor that he may assert his rights according to the manner in which he has elected to assert them for himself.

7. And while asserting the rights of the creditor, who, by the remedy he has elected to employ, has affirmed the sale to the fraudulent vendee, he cannot insist

upon rights which the creditor would have had if he had disaffirmed the sale and was asserting rights resulting from such disaffirmance.

8. So, in such case it would be of no importance for the sheriff to establish the means by which the creditor was defrauded in the sale of his goods, only so far as it would conduce to prove the fraudulent intent of his vendee in afterwards selling the goods himself.

9. WAIVING THE FRAUD — *and affirming the sale — evidence thereof.* Where a party who have been induced to sell property upon a credit by fraudulent means, sues in assumpsit for the price, he thereby, at least *prima facie*, affirms the sale and waives the fraud and all rights resulting from it.

10. FRAUD — *sale to hinder and delay creditors — when purchaser not affected by knowledge of the fraud.* Where one purchases goods with the knowledge that his vendor intends by the sale to defraud his creditors, such purchaser will not be affected by that knowledge if he receives the goods in payment of an honest debt.

11. A creditor violates no rule of law when he takes payment of his demand, though other creditors are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims.

12. But it seems if the vendor in such case had purchased the goods upon credit by means of fraud, and the creditors thus defrauded should elect to disaffirm the sale, the subsequent purchaser, having knowledge of the means by which his vendor had obtained the goods, would hold them subject to the rights of the defrauded creditors, although he took the goods in payment of a debt.

13. The knowledge on the part of the subsequent purchaser of the fraudulent means by which his vendor obtained the goods, would not, however, affect his title in case the creditor elects to affirm the sale to his fraudulent vendee by a suit to recover the price agreed to be paid for them.

APPEAL from the Superior Court of Chicago.

This was an action of trespass *de bonis asportatis* brought in the court below by Samuel S. St. John against John Gray. It appears that certain creditors of one Orville Finch had previously sued out of the Superior Court of Chicago, writs of attachment against him, which came to the hands of the defendant, Gray, as sheriff of Cook county, and were by him levied upon a quantity of dry goods found in the possession of St. John, the plaintiff, and by virtue thereof Gray seized the goods and carried them away; and in this consists the alleged trespass. The defendant justifies the taking under the writs.

Judgments were rendered for the plaintiffs in the attachment suits, and the goods were sold under executions issued thereon.

The merits of the controversy will appear from the following brief statement: On the 7th day of December, 1858, the goods were the property of Finch, and on that day, being a few days prior to the levy of the writs of attachment, he sold them to Darius C. Jackson, and Jackson sold them to St. John, the plaintiff in this suit, in whose hands they were seized under the writs.

It is alleged by Gray that the sale from Finch to Jackson was fraudulent and void, for the reason that it was made for the purpose of hindering and delaying the creditors of Finch; and that both Jackson and St. John had knowledge of such fraudulent intent on the part of Finch at the time of the sales to them, respectively; therefore, the goods were held by St. John subject to the rights of Finch's creditors.

On the other hand, St. John, while he admits that he has no greater rights than those acquired by Jackson, insists that Jackson purchased the goods in good faith, in payment of a debt due from Finch to him.

The testimony shows that Finch was insolvent; that the sale to Jackson deprived him of all means of paying his other creditors, to whom he was largely indebted; and was clandestinely made; and that Jackson paid little or nothing for the goods, compared with their value, except the discharge of Finch's indebtedness; and it was also shown that Finch obtained the goods from those same attaching creditors upon time, by means of false and fraudulent representations. Some of the testimony offered to prove the fraudulent manner in which Finch obtained from the attaching creditors a large quantity of goods, including those in controversy in this suit, was rejected by the court below; but it is not necessary to notice that more particularly, because the ruling on that subject is sustained upon the grounds, 1st, that so far as that testimony tended to show the intent with which Finch disposed of the goods, it was unnecessary, that fact being already sufficiently established; and 2d, so far as the rejected testimony would go to establish the fraudulent means employed by Finch to obtain the goods, as an independent proposition,

it was not properly admissible, for the reason that the attaching creditors had waived the fraud and affirmed the sales to Finch, by suing for the price of the goods; and the sheriff, in justifying under the writs, but asserts the rights of those creditors according to the manner in which they have asserted them for themselves.

It appears that Jackson had knowledge, at the time of his purchase, of the fraudulent intent with which Finch was disposing of the goods, and the question is presented, as to what effect that knowledge should have upon Jackson's rights, in view of his purchasing the goods in payment of the debt he held against Finch; and thereby, the *bona fides* of that indebtedness is involved.

The plaintiff requested the court to give the following instructions, which were given, defendants excepting to each and all:

1.   If the jury believe, from the evidence, that the plaintiff, St. John, purchased the goods in question of D. C. Jackson, in good faith and for a valuable consideration paid, or secured to be paid by him for the same, and that the goods were delivered to him by Jackson (and a delivery to the railroad company to be carried to Wisconsin, and directed to the plaintiff, was a delivery to the plaintiff), they will find for the plaintiff the value of the goods at the time they were taken by the defendants, with six per cent. interest on that amount since the time of taking; unless the jury further believe from the evidence that St. John made such purchase with the purpose of assisting Jackson and Finch in defrauding, hindering or delaying the creditors of Finch.

2.   The jury are instructed that fraud is not presumed to exist, but it must be proved; and unless the jury believe, from the evidence, that Jackson made the purchase of the goods in question with intent to hinder, delay or defraud the creditors of Finch, and that plaintiff knew of such intent on the part of Jackson, and assisted, or intended to assist in effecting that purpose; they will find for the plaintiff the value of the goods at the time of taking them by the defendant, with six per

cent. interest on the same. This is so if plaintiff purchased the goods in good faith and for a valuable consideration.

3. The jury are instructed that a man has a right to pay one of his creditors in full to the exclusion of his other creditors; and if the jury believe, from the evidence, that Jackson made the purchase of the goods in question solely to secure a *bona fide* indebtedness due himself, and not for the purpose of hindering, delaying or defrauding the creditors of Finch, they will find for the plaintiff the value of the goods as stated in the preceding instructions, notwithstanding Finch was insolvent at the time of said purchase by Jackson of Finch.

4. If the jury believe, from the evidence, that Jackson was a creditor of Orville Finch at the time he purchased these goods, and that his sole object in making such purchase was to secure himself, and in good faith obtain his pay from Finch, then the fact that he may have known of Finch's indebtedness, or even insolvency, if such was the case at that time, does not vitiate or render fraudulent the sale of the goods from Finch to Jackson.

5. The jury are instructed that any fraud, or circumstances of fraud, on the part of Finch in the sale of the goods in question, cannot defeat the title of the plaintiff in the suit; unless the jury shall find that said plaintiff had knowledge of such fraudulent intent on the part of Finch, and intended to assist and did assist Finch in executing such fraudulent intent.

6. If the jury find that the defendants took the goods in manner and form as set forth in the plaintiff's declaration, they will be at liberty, in arriving at the value of the goods at the time of the taking by the defendants, as compared with the amount the goods sold for at the sheriff's sale, to take into consideration all the circumstances of the taking and storing of the goods, the length of time they were detained before sale, the season of the year, and all the circumstances of sale at auction by the plaintiff, and they are not bound by the amount the goods brought at such sale, unless they believe that was the full value of the goods at Chicago at the time of the taking of the goods by the sheriff.

The defendants then asked the court to give the following instructions to the jury, of which the 2d, 3d, 4th, 5th and 11th were given, and the others refused as asked; but the 1st, 6th, 8th and 10th given as modified by instruction marked "Drawn and given by the court," and read in connection with each instruction, and 7th modified by words near close, "and designed to aid Finch in perpetrating a fraud"—defendants excepting to such refusal and modifications.

1. If the jury find, from the evidence, that the goods levied on by the sheriff were sold or transferred by Finch to Jackson, and by Jackson to St. John, with a view to hinder or delay the creditors of Finch, or in any manner to defraud the creditors of Finch, and that Jackson and St. John knowingly aided and assisted in hindering, delaying or defrauding said creditors, then the sales and transfers were void and conveyed no title as against the creditors of Finch, and the jury should find for the defendants.

This instruction the court refused as asked, but gave with the modification and addition following, defendants excepting to refusal of instruction and to modification.

"This instruction is given subject to the qualification contained in the next instruction, marked as "Drawn and given by the Court."

*Instruction "drawn and given by the Court."*

A conveyance of property, made in good faith to pay an honest debt, is not fraudulent, though the debtor be insolvent, and the creditor be aware at the time that it will have the effect of defeating the collection of other debts. To avoid the conveyance, there must be real design on the part of the debtor to prevent the application of his property in whole or in part to the satisfaction of his debts. A creditor violates no rule of law when he takes payment or security for his demand, though others are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims. 10 Cal. 277; 19 id. 46; 4 Sandf. Sup. 252; 21 Penn. 495; 6 B. Monroe, 608; 11 id. 102.

2. If the jury find from the evidence that Jackson bought the goods of Finch, and paid a fair price for them, still he acquired no title to the goods as against the creditors of Finch, if he bought with a design to aid Finch in defrauding his creditors, and if St. John bought the goods of Jackson with a knowledge of all the facts, his purchase would stand on the same footing as against the creditors of Finch, and in judging of the question of fraud, the jury will take into consideration all the facts and circumstances proved in the case.

3. If the jury believe from the evidence that Finch obtained a quantity of goods in Boston and New York on credit, and that Jackson and St. John bought these goods or a portion of them, knowing that Finch was indebted for them, and with the intent or design to defraud the creditors of Finch, or to aid said Finch in defrauding said creditors, then said purchase is void as against said creditors, and the sheriff is not liable in this action, even though there was no openly expressed intention to defraud, and only a secret purpose and intent.

4. If the jury believe from the evidence that Finch, Weed, and Isaac Smith conspired together to obtain goods of New York and Boston merchants without paying for them, and that Jackson and St. John bought the goods so obtained in order to aid in carrying out the conspiracy, and with the knowledge that the goods were so obtained, then such purchases by Jackson and St. John were void as against said merchants, and Jackson and St. John obtained no good title, even though they paid the full value of the goods.

5. If the jury believe from the evidence in the case, that Orville Finch sold the goods in controversy to Darius C. Jackson with the intent or purpose to hinder, delay or defraud his creditors, and that said Jackson did not purchase said goods in good faith, and for a valuable consideration, then such sale was fraudulent and void as to the creditors of said Finch.

6. If the jury believe from the evidence in the case, that at the time of the sale of the goods in controversy by Orville Finch to Darius C. Jackson, said Finch was insolvent, that such sale was hurriedly or privately made, that it was of a

wholesale character and embraced goods but then recently purchased, these facts would, unexplained, justify the presumption that the purpose and intent of said Finch in making said sale, was to hinder, delay and defraud his creditors.

This instruction the court refused as asked, but gave with the modification and addition following, defendants excepting. The modification being the same as that to the first.

7. If the jury believe, from the evidence in the case, that Orville Finch sold and disposed of the goods in controversy to ·Darius C. Jackson, with the purpose and intent to hinder, delay or defraud his creditors, and that at the time of such sale to, and purchase by, Jackson, he, said Jackson, had knowledge of such purpose or intent (and designed to aid Finch in perpetrating a fraud), then such sale is fraudulent and void as to the creditors of said Finch.

Refused as asked, but given with addition of words included in brackets.

8. If the jury believe, from the evidence in the case, that Darius C. Jackson, at the time of the purchase by him of the goods in controversy, had knowledge of the existence of such facts and circumstances as show that said Finch made such sale with the intent or purpose to hinder, delay or defraud his creditors, then he is not a purchaser in good faith.

This instruction the court refused as asked, but gave with· the same modification and addition as that given to the first.

9. The jury are instructed, as matter of law, that knowledge· by the purchaser of property, of facts and circumstances (if there are such in the case), which show that the sale was made to him with the intent and for the purpose on the part of the· person from whom the sale was made thereby to hinder, delay or defraud his creditors, is evidence of bad faith in such purchaser.

10. The jury are instructed, as matter of law, that knowledge by the purchaser of property, of those facts and circumstances, which show a fraudulent intent or purpose, in the person from whom such purchase is made, is sufficient proof of knowledge of the purpose itself.

This instruction the court refused as asked, but gave with the same modification and addition as that made in the first.

11. The jury are instructed, as matter of law, that it is entirely immaterial to the issues involved in this case whether any of the goods seized and taken by the defendant Gray on the attachments in his hands were sold to Orville Finch by the plaintiffs in said attachments.

The following instructions asked by defendants were refused, defendants excepting:

12. If the jury believe, from the evidence, that Jackson and St. John purchased the goods in question, with the knowledge that Finch had not paid and was unable to pay for the same, this fact raises a strong presumption that the purchases were made to hinder or delay the creditors of Finch, and that such purchases were void as against such creditors.

13. If the jury find, from the evidence, that the stock of goods, purchased by Jackson and Isaac Smith of Fryer, was purchased without any examination by the purchasers, that the successive firms of I. Smith & Co., Isaac Smith and Smith & Co., bought and sold said stock of goods in quick succession, without any apparent honest reason for their buying or selling; and if the jury further find, from the evidence, that Isaac Smith, acting for himself and Jackson, exchanged the notes of Harmon Smith and Finch for the notes of Finch alone, when Finch was of doubtful solvency; these are circumstances proper to be considered in determining the honesty or dishonesty of subsequent transactions growing out of these sales.

14. If the jury find, from the evidence, that Finch obtained a quantity of goods on credit by means of false and fraudulent representations, that Isaac Smith and Wm. G. Weed were engaged in assisting Finch to obtain said goods, knowing his real condition, that Isaac Smith had just before been the partner of Jackson, that he was acting for the benefit of Jackson in getting goods into the hands of Finch by means of which Finch might pay notes held by Jackson, or for Jackson's benefit, that Wm. G. Weed received from Jackson a quantity of goods for no other known services rendered for Jackson, and that

Jackson was the man for whose benefit the goods were obtained by Finch; these are facts tending to show that Jackson was a party to the fraud in obtaining the goods, and also tending to show that he purchased the goods of Finch as a further step in the carrying out of the fraud, and that such purchase was void as against the creditors of Finch.

15. If the jury find from the evidence, that after he had purchased the goods, and before he sold to St. John, Jackson commenced packing and marking the goods in St. John's name, that he sold to St. John an order to get the goods into the hands of a third party, that he continued to look after and take charge of the goods after the sale to St. John, that the store was kept open and sale of goods continued in order to conceal from the public the fact that the goods were being removed, that the goods were taken from the shelves so that their absence would not be noticed, that the goods were packed in the cellar, that they were packed in the night, that the clerks were enjoined to secrecy, that the carmen were directed to take the goods to the depot by circuitous routes, that the goods were taken to the depot at an unusually early hour, that Jackson was holding secret meetings with Finch, Smith and Weed, that after his pretended sale to St. John Jackson told the clerks that they were at work for him, that the goods were directed to St. John at a place where he did not live and from whence they were to be re-shipped, that Jackson looked after the goods on his way at Buffalo and Chicago; these are badges of fraud to be considered by the jury in determining whether Jackson was attempting a fraud or aiding or assisting any other person in committing a fraud upon the creditors of Finch, and if the jury find from this or other evidence that Jackson was in his purchase attempting, or aiding, or assisting in such fraud, then such purchase was void as against said creditors, and Jackson acquired no good title to said goods.

Refused, with following comments on margin: The " argument injected " being considered too lengthy. The congeries of so-called instructions ought to contain principles of law. The court has not time to examine arguments based upon the

facts claimed to have been proved. 1 Black U. S. Rep. 537, and *Law* v. *Cross*, 20 Ill. 65.

16. The jury are instructed as matter of law that fraud may be proved by circumstantial as well as positive proof; where fraud is charged express proof is not required. It may be inferred from strong presumptive circumstances, and if the jury believe from the evidence in this case that at the time the sale of the goods in controversy was made by Orville Finch to Darius C. Jackson said Finch was insolvent and Jackson knew it, that the sale was of Finch's entire stock of goods and that Jackson knew it, that a large portion of the goods thus sold had been but recently purchased and were not paid for, and that Jackson had knowledge of this fact also, that the sale from Finch to Jackson was hurriedly made, that the fact that the sale had been made was kept secret by both parties, that the goods after the sale had been made were hurriedly and secretly packed and shipped to a secret place; then from such facts and circumstances they would be justified in inferring that such sale was made with the intent and purpose to hinder, delay or defraud creditors of said Finch, and that said Jackson participated therein.

The jury found the defendant guilty of the alleged trespass, and assessed the plaintiff's damages at the sum of $8,695.38.

A motion for a new trial was overruled, and judgment was entered upon the verdict. The defendant thereupon took this appeal. The questions presented under the assignment of errors, are, *first*, whether the court may reject evidence which is competent, but merely cumulative upon a proposition already sufficiently established; *second*, whether the manner in which Finch obtained the goods was competent to be shown as tending to prove his intent in disposing of them; *third*, whether it is proper to consider, as an independent proposition, the fact that the creditors of Finch were induced to sell him the goods by means of fraudulent representations, in an action by those creditors to recover the price of the goods ; and *fourth*, what effect the knowledge of Jackson of his vendor's fraudulent intent in selling the goods, should have upon his rights, if he purchased

the goods in payment of a *bona fide* debt due to him from his vendor; and herein, as a question of fact, was the debt alleged to be due from Finch to Jackson, a *bona fide* debt?

Mr. EMERY A. STORRS, and Messrs. THOMPSON & BISHOP, for the appellant.

1. The testimony offered to prove the fraudulent means employed by Finch in obtaining the goods, was improperly excluded.

As the intent of Finch in making the sale was necessarily involved in determining the validity of the sale, the testimony was proper for that purpose, and should have been admitted. *Bridge* v. *Eggleston*, 14 Mass. 249; *Foster* v. *Hall*, 12 Pick. 99; *Howe* v. *Reed*, 3 Fairfield, 518; *Cary* v. *Hotailing*, 1 Hill, 316; *Painter* v. *Drum*, 40 Penn. State, 471; *Whittier* v. *Varney*, 10 New Hamp. 294; *Blake* v. *Howard*, 2 Fairfield, 202; *Lovell* v. *Briggs*, 2 New Hamp. 223; *Wiggins* v. *Day*, 9 Gray, 97.

2. Counsel contended, that under the proof the complicity of Jackson and St. John with the fraudulent intent of Finch in selling the goods was clearly shown; and that Jackson's purpose in buying the goods was not to protect himself as a creditor of Finch, so much as it was to aid him in defrauding his creditors.

3. *The court erred in giving the instructions which were given for the appellee.*

1. The *second* instruction given for the appellee asserts substantially that fraud cannot be presumed.

This is not strictly correct and it misleads the jury.

Fraud *may* be presumed from facts and circumstances proved in the case. *Kaine* v. *Weigley*, 22 Penn. 183; *Wheldon* v. *Wilson*, 44 Maine, 18; *Seligman* v. *Kalkman*, 8 Cal. 213; *McDaniel* v. *Baca*, 2 Cal. 339; *Myers* v. *Hart*, 10 Watts, 107; *Doe* v. *Dignowitty*, 4 S. & M. 74.

The fifth instruction given for appellee is erroneous in that it asserts, that in order to invalidate the sale, the plaintiff should not only have had knowledge of the fraudulent purpose

of Finch, *but should have intended to assist, and did assist him in executing it.* This is not good law, because, if the plaintiff, having knowledge of Finch's fraud, bought for the purpose of assisting and benefiting *himself* rather than Finch, the sale would have been invalid.

4. *The court erred in qualifying the instructions requested by the appellant.*

The *first* instruction, qualified by the court, states a proposition which admits of no qualification whatever. It is good law at all times, and under all circumstances. The instruction given by the court, taken in connection with the one which it qualifies, is incoherent and meaningless. It misleads the jury; has no legitimate connection with the subject matter embraced in the instruction as requested, and both instructions taken and read together, were not, and cannot be made consistent.

The same remarks will apply to instructions requested by appellant, numbered 6, 8 and 18, which were qualified in the same manner and by the same instruction.

5. *The instruction given by the court, and marked "instruction drawn and given by the court," was improperly given.*

It enunciates an abstract legal proposition which might or might not have any application whatever to the case as the jury might find the facts to be from the evidence.

It *assumes* that the purchase made by Jackson, was made by him as the *creditor* of Finch. At all events, it thrusts that idea prominently before the jury; whereas, as we insist, Jackson was not a creditor of Finch. At all events, that question should have been determined by the jury as a matter of fact, and not assumed by the court as a matter of law. It was practically the expression of the opinion of the court, *five times repeated*, as to the weight of evidence upon that point.

This instruction was read to the jury by the court *five times.* There is nothing of sufficient merit in the instruction to entitle it to that degree of prominence in the case. It was evidently the intention of the court that the instruction, and all the inferences to be drawn from it, should have controlling weight with

the jury. An instruction "*drawn* and given by the court" is entitled to no more weight than an instruction "drawn by *counsel* and given by the court." This we think was unfair. We think it deprived us of a fair trial, and misled the jury.

The court cited authorities at the end of the instruction, marked "instruction drawn and given by the court." The instruction, therefore, went to the jury apparently supported and sustained by authorities, the application of which the counsel for appellants had no opportunity to meet and refute, as they think they could have done.

It is submitted that the court had no right or authority to volunteer an instruction not requested by any of the counsel in the case.

6. *The court erred in refusing to give instructions requested by appellant.*

Instructions numbered 12, 13, 14, 15, were simply based upon the facts proved in the case, and intended to make the application of the law to those facts. The ultimate questions to be determined by the jury were the motives of the parties to these sales, and the law as stated in those instructions is, as we claim, correct as to the inferences which are to be drawn from the existence of such facts. As such they should have been given to the jury.

Instruction numbered 16 should have been given. The court had already told the jury that fraud could not be presumed, but must be proved. The instruction thus given rendered it necessary to instruct the jury as to *how* fraud might be proven. As to the various points stated in that instruction are the following authorities :

That express proof of fraud is not required, see authorities cited under point 1.

*Insolvency* of vendor as evidence of fraud. *Helfirth* v. *Stern*, 19 Penn. 151; *Stutson* v *Brown*, 7 Cow. 734; *Browning* v. *Hart*, 6 Barb. 93; *Walcott* v. *Almy*, 6 McLean, 23; *Jessup* v. *Johnson*, 3 Jones (Law); *Riddle* v. *Shirley*, 5 Cal. 489; *Dietus* v. *Fuss*, 18 Maryland, 167; *Clark* v. *Depew*, 25 Penn. 516.

As to the *wholesale* nature of the sale. *Delaware* v. *Ensign*, 2 Barb. 88; *Browning* v. *Hart*, 6 id. 99.

Of property *recently purchased*. *Delaware* v. *Ensign*.

The sale privately made. *Kaine* v. *Weigley*, 23 Penn. 183.

Knowledge of facts showing fraud is knowledge of fraud. *Nesbitt* v. *Digby*, 13 Ill. 394; *Dean* v. *Connelly*, 6 Penn. 245; *Ashmeak* v. *Hean*, 13 id. 588; *Wright* v. *Brandis*, 1 Carter, 336; *Kimball* v. *Thompson*, 6 Cush. 446; *Bridge* v. *Eggleston*, 14 Mass. 249; *Foster* v. *Hall*, 12 Pick. 99; *Reinheimer* v. *Hemingway*, 35 Penn. 436; *Mills* v. *Howeth*, 19 Texas, 257; *Saltus* v. *Everett*, 20 Wend. 277; *Danforth* v. *Dart*, H. Duer, 101; *Pringle* v. *Phillips*, 5 Sandf. 157; *Robinson* v. *Holt*, 39 New Hamp. 561.

Mr. F. H. KALES, for the appellee, contended that the appellant had wholly failed to show that Jackson had any knowledge of the fraudulent designs of Finch, if he had any; that under the instructions the jury have found, that upon the evidence Jackson had no complicity in Finch's fraud; but that he was a creditor of Finch, and to save himself he made this purchase.

The evidence offered to show the fraudulent character of the transaction between Finch and his creditors in his purchase of the goods from them, and which was rejected by the court below, was properly excluded; first, because, as to Jackson, it was irrelevant; and second, because it was merely cumulative.

The defendant's instructions were properly modified.

Every instruction asked by defendant, as originally drawn, assumed as a fact that Jackson was not a creditor of Finch; this was a question of fact to have been left to the jury; and the court, as well as it could, endeavored to render the instructions proper, by modifying them.

The other instructions asked by the defendants, and refused by the court, were properly refused.

1. These instructions assumed as an undisputed fact that Jackson was not a creditor of Finch; upon the evidence this was a question for the jury to determine.

2. If Jackson was a creditor of Finch, and was only endeavoring to secure his debt as a matter of fact, then the

instructions were not correct, and should have been refused by the court. 38 Penn. 454; *Beals* v. *Guernsey*, 8 Johns. 446; 29 Penn. 389; 39 id. 459; 35 id. 436; *Ewing* v. *Runkle*, 20 Ill. 457; *Coran* v. *Hart*, 21 Penn. 495.

As to particular instructions, the 12th and 13th do not lay down correct principles of law in every event. The 14th is covered by the 3d and 4th given. *Montag* v. *Linn*, 23 Ill. 551; *Springdale Cem. Asso.* v. *Smith*, 24 id. 380. The 15th and 16th are argumentative on the facts. All instructions should contain principles of law, and leave *all the* facts to the jury. *Nelson* v. *Smith*, 28 Ill. 495; *Gehr* v. *Hagerman*, 26 id. 438; *Merritt* v. *Merritt*, 20 id. 65.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

The appellee commenced an action of trespass for taking and carrying away a quantity of dry goods. The creditors of one Orville Finch had sued out of the Superior Court of Chicago, writs of attachment against him under which the appellant, as the sheriff of Cook county, justified the taking. Judgments were rendered in the attachment suits and the goods were sold upon executions issued thereon. On the 7th day of December, 1858, the goods were the property of Finch, and on that day, being a few days prior to the levy, he sold the same to Darius C. Jackson, who sold them to the appellee. The sale from Finch to Jackson is alleged to have been fraudulent and void for the reason that it was made to hinder and delay creditors. While the appellee admits that he has no greater rights than those acquired by Jackson, he insists that Jackson purchased the goods in good faith in payment of a debt due from Finch.

The evidence discloses a conspiracy of a nature justly entitling the State to the services of the parties concerned in it, by which Finch obtained a large quantity of goods from the attaching creditors, and a portion of the goods in controversy are those thus obtained. On the trial, portions of the depositions of two of the conspirators, explaining more in detail the fraudulent means resorted to by them to accomplish their pur-

pose, were excluded. The excluded portions of the depositions were competent evidence to establish a fraud on the part of Finch in obtaining goods from the attaching creditors, and were also evidence of fraud in the sale to Jackson. To prove the intent of Finch in making the sale we are of the opinion that the manner in which he had then recently obtained goods from his creditors was admissible, as well as the manner in which he disposed of them. *Bridge* v. *Eggleston*, 14 Mass. 249; *Foster* v. *Hall*, 12 Pick. 99; *Howe* v. *Reed*, 3 Fairf. 518; *Carey* v. *Hotailing*, 1 Hill, 316; *Painter* v. *Drum*, 40 Penn. 471. Courts have the right to limit the number of witnesses to be examined and the number of depositions to be read to prove a particular fact. When a fact is sufficiently established and is not controverted the court may properly refuse to suffer its time to be occupied in hearing further evidence on that point. The testimony introduced established beyond controversy, that Finch was insolvent, that the sale to Jackson deprived Finch of all means of paying his other creditors, and was clandestinely made, and that Jackson paid little or nothing for the goods compared with their value, excepting the discharge of Finch's indebtedness. It also established that the goods obtained from the attaching creditors were so obtained upon false and fraudulent representations. The manner in which they were disposed of, after they were obtained, was shown. The extent of Jackson's knowledge in regard to the transactions of Finch was also established. From the evidence the character of the sale to Jackson depended solely upon the *bona fides* of the indebtedness of Finch in payment of which the goods were taken, and no attempt was made to sustain it upon any other ground. If that ground failed, there was no controversy as to its invalidity. Under the circumstances, there was no error in not receiving further testimony to prove the intention of Finch. It had been sufficiently proven, and it would have been only a waste of time to receive the testimony for that purpose. The excluded testimony was offered, not so much for the purpose of showing the fraudulent intention of Finch, as to establish the details of a conspiracy

between him and others to defraud the attaching creditors, the appellant insisting that if he could establish a conspiracy and Jackson's knowledge of it at the time of his purchase, the jury should be instructed that the sale to him was invalid notwithstanding it was made in good faith to pay a *bona fide* indebtedness.

We are of the opinion that the establishment of a conspiracy, and Jackson's knowledge of it, would not have entitled the appellant to the instruction sought for. The appellant, as sheriff, so far represented the attaching creditors as to enable him to assert their rights in the suits which they had commenced. They might have disaffirmed the sales made by them, and commenced actions of replevin or trover for the recovery of the property obtained by means of the conspiracy, or damages for its conversion, and in such actions the means by which Finch obtained the property, and Jackson's knowledge of such means, would have been important; but to sustain the rights of the creditors in actions of assumpsit to recover the price for which the goods were sold, such evidence was entirely immaterial.

The creditors had their election to disaffirm the sales made by them on the ground of fraud, and invest themselves with the rights and entitle themselves to the remedies the law affords in such cases; or they might affirm the sales and have the rights and remedies of other creditors. The commencement of the attachment suits was, at least, a *prima facie* affirmance of the sales and waiver of the fraud, and all rights resulting from it. The appellant, on behalf of the creditors, now asserts their rights in affirmance of the sales, and while thus asserting them he cannot insist upon rights which they would have had if they had disaffirmed the sales and were asserting rights resulting from such disaffirmance. The creditors who were defrauded by the conspiracy have, in this suit, no greater rights than creditors who were not thereby defrauded. It was, therefore, of no importance to establish the conspiracy, as it could only serve to establish the fraudulent intention of Finch, and that was already established. The knowledge which Jackson had

of the fraudulent intention of Finch did not prevent him from receiving pay of an honest debt. A creditor violates no rule of law when he takes payment of his demand, though other creditors are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims. *Ewing* v. *Runkle*, 20 Ill. 457. So far as Jackson received goods which were obtained from the attaching creditors by fraud, he may have received them subject to their rights upon a disaffirmance of the sales, but those rights are not now in controversy. The knowledge that Jackson had of the means by which the goods were obtained is of no importance, except in a suit for the assertion of rights resulting from a disaffirmance of the sales.

The only questions in controversy on the trial were the *bona fides* of the indebtedness of Finch, and whether the sale was, in fact, made to pay it, and taking all the instructions together, we are of the opinion that these questions were submitted to the jury in a manner not likely to mislead them, and we are satisfied with the conclusion at which they arrived. We do not deem it necessary to consider, at length, the manifold and serious objections to the instructions given relating to matters which we are of the opinion are irrelevant to the merits.

The judgment of the court below is affirmed.

*Judgment affirmed.*