JACOB WINDMILLER

V.

CLARK P. CHAPMAN.

*Sheriffs—Action against for Levying on Goods—Stipulation to Waive a Jury, Whether Authorized by Defendants in Interest—Levy of Attachment, What Necessary to Constitute—Whether Plaintiff Purchased Goods in Good Faith—Notice of Attachment.*

1. Where an action was brought against a sheriff for levying an attachment writ on certain goods, claimed by the plaintiff, and selling the same,

and a stipulation was entered into waiving a jury, and submitting the case to the court on the record of a former trial, and subsequently the real defendants, being the plaintiffs in the attachment suit prior to the trial, petitioned the court for a jury trial, alleging that they had not authorized the stipulation, but that it was authorized by the nominal defendant, *held:* That as it did not appear but that the attorneys who signed the stipulation were authorized to appear for the petitioners, the petition was properly refused.

2.   An officer making a levy must so deal with the property, in order to make a good levy, as would, without the protection of the writ, render him a trespasser.

3.   If a purchaser takes goods in good faith, in payment of an honest debt, his title is not affected by the fact that he may know of suspicious actions on the part of vendors, or that attachment proceedings are threatened, or a writ issued, unless a levy has been made.

4.   Knowledge of the fraudulent intent of the grantor to defraud other creditors carried home to the grantee, will not avoid a sale if the grantee in taking the property is actuated by a desire, in good faith, to receive payment of an honest debt.

[Opinion filed November 21, 1890.]

APPEAL from the Circuit Court of Pike County; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. R. W. MILLS, for appellant.

Messrs. ORR & CRAWFORD and MATTHEWS & GRIGSBY, for appellee.

CONGER, P. J.   This was a suit brought by appellee against the appellant, who was sheriff of Pike county, for levying upon and selling certain goods under certain attachment writs against the Fishells, which goods appellee claimed had been bought by him, and were his property, and hence not subject to the writs.   A trial was had by the court without a jury and judgment rendered against appellant for $1,900.   The case was before us at the May term, 1888, and is reported in 29 Ill. App. 393.

The first error assigned is the denial by the court below of the application of the real defendants for a trial by jury.   It appears from the record that on the 9th day of April, 1890,

the cause was called for trial, the examination of jurors begun, when a written stipulation was entered into between the counsel representing each side, by which a jury was waived and the case was to be tried by the court upon the record of the former trial, then on file in this court. Thereupon appellee discharged and sent home his witnesses in attendance, among them being two from Chicago, and under such agreement, which was filed in court, the cause stood over until the 30th day of April, 1890, when the record of the former trial having in the meantime been procured from the clerk of this court, and the cause ready for hearing in accordance with the stipulation of the 9th, Samuel H. Thompson and others, who were the plaintiffs in the attachment suits against Fishels, and at whose suits the sheriff had sold the goods in controversy, filed a petition praying for a jury to try the case. The petition shows that they were the plaintiffs in said attachment suits; that they had given a bond of indemnity to the sheriff to save and keep him harmless because of the levy and sale, and then the petition continues:

"Petitioners further state that they have employed counsel, and ever since the commencement of this suit they have taken the entire control of the defense of the same, and have employed and paid the attorneys who have managed, conducted and controlled the defense of the case from its inception. Petitioners further state that they are informed that said nominal defendant, Jacob Windmiller, has waived the right of trial of this cause by a jury, and that the same may be tried by the court. And petitioners further state that such waiver of a jury was without the knowledge or consent of these petitioners or either of them, and state that they are unwilling to waive the right to try this cause by a jury and have never consented to such waiver."

The attorneys signing the stipulation on the part of the defense were Messrs. Doocey & Bush and Harry Higbee. Upon the hearing of this petition besides the affidavit of appellee's attorneys, Mr. Bush was sworn and testified as follows: "We represent these parties (the petitioners), not Mr. Windmiller. Mr. Millard was here saying that he represented all

these parties in this case from Peoria.  Mr. Millard is the bookkeeper for Oakford & Fahnestock.  We were attorneys for some of these petitioners in the original suit and in this case last term of this court.  When the jury was called this stipulation was made.  Mr. Millard came the day this stipulation was made; he authorized us to employ Mr. Higbee to try this case.  Mr. Mills has been in the case all of the time, I believe the principal attorney.  Mr. Millard treated us as resident attorneys to try the case, if Mr. Mills were not here. We were the only attorneys here representing the defendants on the day set for trial."

The petition was refused and the cause tried by the court, in accordance with the stipulation.  The jury for the term had been discharged some days before.  The court could well presume that the attorneys, appearing in court for the defendant in the suit, were doing so rightfully and with proper authority until the contrary appeared.  Ransom v. Jones, 1 Scam. 291.  Conceding, without deciding, that the petitioners could take the entire control and management of the defense away from Windmiller, the only defendant appearing of record, it would seem, by their own showing, that they had done so.  Messrs. Doocey & Bush had been employed by the bookkeeper of one of the petitioning firms, who claimed to represent them all.  Petitioners do not in any way deny his authority to employ counsel for all, but, on the contrary, in their petition say: "They have taken entire control of the defense, employed and paid the attorneys who have managed, conducted and controlled the defense of the case from its inception."  While they say they have never consented to the waiver of a jury, and that they understand Windmiller, the nominal plaintiff, has so consented, they are very careful in their petition to omit any charge or intimation that Messrs. Doocey & Bush and Mr. Higbee were not their attorneys, or were acting without authority in signing the stipulation, which had been on file in the court from the 8th to the 30th day of April, 1890, the day the petition was filed.  On that day, when the petition was filed, it was not a question whether the petitioners ever

knew or consented to the stipulation, but had Doocey & Bush and Mr. Higbee been employed by them to represent them in the suit? We think there was no error in the ruling of the Circuit Court upon this point; such agreements, when fairly made, should be enforced. Hermann v. Pardridge, 79 Ill. 471.

It is urged that the court below erred in refusing to hold the following proposition:

1. "That if before the alleged purchase of the stock of goods in controversy by the plaintiff, the sheriff had been in possession of the goods under the Oakford & Fahnestock writ of attachment, and had been induced by a trick to part with the possession, and that Chapman had notice of the above facts, or sufficient information in regard to the existence of such a writ of attachment to induce a reasonably prudent man to make inquiry concerning the same, then Chapman could not afterward acquire a title to the stock of goods that he could set up against the sheriff under that writ." Refused.

The only basis for the claim that there was a levy, or that the sheriff was ever in possession of the goods prior to Chapman's purchase, is shown by the evidence of M. S. Darrah, which is abstracted as follows:

"On December 31, 1886, I was deputy sheriff of this county, and I received this attachment writ (Oakford & Fahnestock v. Fishell & Co.); first went down to Ferdinand's house and served the writ on Lizzie Fishell and demanded the property; she said she had none; about six or seven o'clock I went to the store and found the windows blinded and door locked; knocked at the door and Albert Fishell opened the door and I went in; he and Barney McGary were there, but will not be sure that Ferdinand was there. I told them I had a writ of attachment and was there to comply with the requirements of the law in the case. When I told them that, I know Ferdinand was present; I told them that I would not interfere with their business if they would give me a delivery bond; Ferdinand said I will go and see our attorney; Albert and McGary were still there; Albert said he would either give me a delivery bond or I could levy on the goods. As I had no

blank with me I proposed to go and get one while F. was gone after his attorney; Fishell said it was not necessary, as Mr. Orr could write one out in a few minutes. When Orr came he asked me what I wanted; I told him I had a writ of attachment; he said the goods were Anna Fishell's, and I replied that it made no difference they were the goods I had the attachment for, that I was there in possession and proposed to make the levy; he defied me to move the goods and I told him I proposed to do it; he asked me who was the attorney of plaintiff in the writ and I told him J. W. Johnson; he said Johnson was a reasonable man; that the matter could be adjusted without any trouble and proposed we all go over to Mr. Johnson's and fix it up; Orr proposed it and Fishell seconded the motion; before I went out I said I wanted it understood that I was to be admitted again; they (Orr and Fishell) replied in substance that it would be all right; Orr, Albert, F. and I went to Johnson's office; when we got there Orr opened the conversation in regard to what was going on there; Johnson told me that it was a trick and that when I returned to the store I would find it locked; I went back and found the lights out and store locked. Early next morning I came back to the store and met Albert Fishell; he said he was willing to go in, and said he would see me again. About eleven o'clock I met him again and he said they were considering whether they would open the door; he did not again say he was willing I should go in."

This evidence, in our opinion, falls far short of showing either a levy, or an actual possession of the goods by the deputy sheriff. The rule as laid down by the Supreme Court in Minor v. Herriford et al., 25 Ill. 346, is:

" The property must be within the power and control of the officer when the levy is made, and he must take it into his possession in a reasonable time thereafter, unless a delivery bond is tendered, and in such an open, public and unequivocal manner as to apprise everybody that the property has been taken in execution. He must so deal with the property, in order to constitute a good levy, as, without the protection of an execution, his acts would make him a trespasser."

The deputy sheriff never so far dealt with the property as to have been regarded as a trespasser, and so long as he did not, the reasons why he left the store are perhaps not important. He still had until the next day at five o'clock P. M. to make his levy, for the testimony of Chapman is that he received possession of the store January 1, 1887, at about five o'clock P. M. The sheriff, therefore, never having been in possession of the goods prior to Chapman's purchase, the proposition was properly refused.

We have carefully considered the evidence, and can see no good ground for interfering with the conclusion of the Circuit Court that Chapman bought the goods in good faith and in payment of an honest debt. Counsel for appellant labor with zeal, and perhaps with a measure of success, to show that the dealings of the Fishells among themselves were not above suspicion, but, as we said when the case was here before, any knowledge Chapman may have had of this would not affect his title if, in his purchase, he took the goods in good faith and in the payment of an honest debt. Reliance seems to be placed on the fact, as claimed, that, before Chapman bought, he had notice of the issuance of some or all of the attachment writs against the property. If this were true it would not affect his title. Until the attachments were actually levied, and a lien thereby created, he could procure a good title by purchase from the owner, unaffected by his knowledge of the attachment proceedings.

" In case of two sales of personal property, both equally valid, his is the better right who first gets possession of the property, and the attaching creditor stands in the light of a purchaser and is to be protected as such." Burnell v. Robertson, 5 Gilm. 282.

In Bump on Fraudulent Conveyance, page 199, it is said: " Mere knowledge of the debtor's insolvency, or of a judgment, or of a threatened attachment, is not sufficient, unless the object of the debtor is to delay, hinder or defraud his creditors, and this purpose is known to the grantee."

But our Supreme Court has held that notice to or knowledge of the fraudulent intent of a grantor to defraud other

creditors, carried home to the grantee, avails nothing if such grantee, in taking the property, is actuated by a desire in good faith to receive payment of an honest debt.  Gray v. St. John, 35 Ill. 222.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*