Mathews v. Reinhardt.

---

# W. Scott Mathews
## v.
## Adolph L. Reinhardt.

43   169
149s  635

*Insolvency—Fraudulent Sale.*

1.   A creditor violates no rule of law when he takes payment of his demand, though other creditors are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims.

2.   Admitting that a person subsequently insolvent, in purchasing goods, fraudulently obtained credit, and that a creditor to whom a bill of sale, covering the same, was given, had knowledge of that fact, it can cut no figure unless there was a disaffirmance of the sale.

3.   The purchase of goods from a person properly in possession under a bill of sale, given by an insolvent, can not be construed as aiding a fraudulent intent on the part of the insolvent, although the purchaser of the stock knew of the pecuniary condition of such insolvent.   And this court holds that there is no evidence in the case presented, justifying the view that a purchaser named was a party to any fraudulent transaction.

4.   While mere inadequacy of price is not *per se* ground for setting aside a transfer, it may be a circumstance to be considered in determining whether the sale was fraudulent; yet unless so gross and palpable as to amount in itself to proof of fraud, it would not authorize a sale to be set aside.

[Opinion filed February 26, 1892.]

Appeal from the Circuit Court of Marion County; the Hon. B. R. Burroughs, Judge, presiding.

Messrs. F. F. NOLEMAN, and CASEY & DWIGHT, for appellant.

Messrs. W. & E. L. STOKER, for appellee.

PHILLIPS, P. J.    This was an action of replevin brought by appellee against appellant, sheriff of Marion County, to recover a stock of jewelry upon which the defendant had levied by virtue of writs of attachment issued against J. W. Poe.

It appears, from the evidence in this record, that for several years prior to the latter part of December of the year 1887, John W. Poe had been keeping a jewelry store at Centralia, Illinois.    In the latter part of 1888 he became largely indebted and was insolvent, having during the latter part of 1888 purchased a large quantity of jewelry amounting to between twelve and sixteen thousand dollars.    Between 1883 and 1887 Poe borrowed large sums of money at different times from John C. Fears, a brother-in-law in St. Louis, and on the night of December 28, 1888, Fears purchased his stock of goods, which was invoiced at about $2,700, and took a bill of sale for same, and claims to have credited Poe's indebtedness to him with that amount, without removing the stock of goods from the store.    Fears placed the same in charge of his agent, E. L. Stoker, and on the morning of the 29th returned to St. Louis.    From some time in 1885 to 1887, plaintiff, a jeweler, had worked for Poe, and in 1888 had a shop in Centralia, and learning of the failure of Poe induced Fears' agent to go to Lebanon and endeavor to sell his stock of goods to Charles Reinhardt, father of plaintiff.    Charles Reinhardt on the 1st of January, 1889, sent a competent agent to estimate and value the stock, and after that examination offered $1,600 for it, which, on being submitted to Fears by his agent, was accepted, and the key of the store was delivered to Charles Reinhardt, who sent the same to the plaintiff, and he was placed in charge of the stock of goods.    A few days thereafter the defendant, as sheriff, levied writs of attachment on the stock of goods, claiming the property to be that of John W. Poe.    That Fears had advanced money to Poe from

time to time, and that Poe was indebted to him at the time of the transfer of the property is clearly shown. That indebtedness exceeds the invoiced value of the goods.

It is urged that the sale was made by Poe with intent to delay and defraud his creditors. He had a right, however, to prefer creditors, and if he elected to prefer Fears and pay him, to the exclusion of other creditors, he could do so, and Fears had a right to buy even though he knew at the time that Poe was insolvent. In Gray v. St. John, 35 Ill. 222, it is said: " The knowledge which Jackson had of the fraudulent intention of Finch did not prevent him from receiving pay of an honest debt. A creditor violates no rule of law when he takes payment of his demand, though other creditors are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims." This rule has been frequently announced. Waddams v. Humphrey, 22 Ill. 661; Wood v. Shaw, 29 Ill. 444; Tomlinson v. Mathews, 98 Ill. 178; Payne v. Miller, 103 Ill. 442. There is no disaffirmance of a sale here, but a suit to recover the value of the property sold, and even if it be admitted that Poe at the time of purchasing, fraudulently obtained credit, and even if Fears had knowledge of that fact, it would be of no importance unless there was a disaffirmance of the sale. Gray v. St. John, *supra*. But there is no evidence tending to show that Fears had such knowledge, nor is there satisfactory evidence to show that the price paid for the property, crediting Poe's indebtedness, was less than its real value. To Charles Reinhardt both Fears and Poe were personally unknown; his agents to examine the property and ascertain its value reported to him that it was not worth to exceed $1,800 or $2,000 and advised that not more than $1,600 be paid therefor, and when Charles Reinhardt purchased it, his negotiation was with Stoker, the agent of Fears, and he paid the full amount he contracted to pay for the property with no knowledge of any fact in connection with Poe, except that he had been informed that he was insolvent. There was in that knowledge nothing to prevent him from buying the property, and the purchase of the property for the purpose of starting his son in business can not be construed as aiding any fraudulent intent that existed in Poe.

From a careful examination of the evidence in this record, we find no fact tending to show that Charles Reinhardt was a party to any fraudulent transaction, and unless he intended to aid in the commission of a fraud by the purchase, or acted in bad faith, the sale would be valid. Myers v. Kinzie, 26 Ill. 36; Ewing v. Runkle, 20 Ill. 449; Gridley v. Bingham, 51 Ill. 153; Hatch v. Jordan, 74 Ill. 414. When Charles Reinhardt turned the property over to the plaintiff it came to him untainted with fraud that would avoid the sale. Under the issues in the case, no question of the goods being fraudulently procured by Poe is in issue. The attaching creditors affirmed their sales by seeking to recover the price. The sheriff having writs of attachment, occupies no better position than do the plaintiffs in attachment. The question as to whether Poe procured the goods by fraudulent representations of his financial ability was not admissible in evidence against this plaintiff, and the exclusion of the report made by Poe to the commercial agency, and the exclusion of certain evidence in depositions, which pertained to the procurement of goods by fraudulent representations, was not error. Neither was it error to exclude from the jury the judgment that was rendered in the case of Nathaniel White against John W. Poe, as that judgment was rendered on an account more than one month after the replevin writ in this case was served and did not tend to determine the issues in this cause. The tenth instruction which excluded this evidence was not error. The defendant insists that the eighth instruction given for plaintiff is erroneous; that instruction is that—" The court instructs the jury for the plaintiff, that the sale and purchase of goods for a less sum than the actual value is not fraudulent, and although you may believe from the evidence that Reinhardt purchased the goods for less than their real value from Fears, that, of itself, is not evidence of fraud or circumvention on the part of Reinhardt, and if you believe Reinhardt acted in good faith you should find for the plaintiff."

While mere inadequacy of price is not, *per se*, ground for setting aside a transfer, it may be a circumstance to be considered in determining whether the sale is fraudulent; still,

unless so gross and palpable as to amount, in itself, to proof of fraud, it would not authorize a sale to be set aside. The entire instruction must be considered together, and makes the question of inadequacy of price apply to the transaction between Reinhardt and Fears, and if Reinhardt acted in good faith inadequacy of price between them would not be evidence of fraud that could be considered by the jury. Under the facts appearing in this record, we hold the giving of this instruction was not erroneous. We find no reversible error in the record, and the judgment is affirmed.

*Judgment affirmed.*